UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CYNTHIA B.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

Case No. 3:17-cv-05792-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits and supplemental security income benefits. The

parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C.

§ 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth

below, the Court reverses defendant's decision to deny benefits and remands for further

administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

In October 2014, plaintiff filed applications for disability insurance benefits and

supplemental security income benefits alleging that she became disabled beginning September 4,

2014. Dkt. 8, Administrative Record (AR) 75, 76, 213-22. The claim was denied on initial

administrative review and on reconsideration. AR 75-144, 148-65. A hearing was held, AR 39-

74, and the ALJ documented his analysis at each of the five steps of the Commissioner's

sequential disability evaluation process. AR 17-38.

Steps one and two were resolved in plaintiff's favor. AR 22. The ALJ found that plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, degenerative disc disease, and knee strain. AR 22. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 22. The ALJ next considered plaintiff's residual functional capacity (RFC) and found at step four that plaintiff could not perform her past relevant work, but that at step five she could perform other jobs that exist in significant numbers in the national economy, and therefore, she was not disabled at that step. AR 31-33.

Plaintiff's request for review was denied by the Appeals Council; plaintiff then appealed to this Court. AR 1-6; Dkt. 1, 4.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical opinion evidence; (2) in evaluating plaintiff's subjective symptom testimony; (3) in evaluating the lay witness testimony; and (4) in evaluating plaintiff's RFC and the step five finding. Dkt. 12.

DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I.  The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff challenges the ALJ's decision rejecting the opinion of examining Clinical Psychologist Keith J. Krueger, Ph.D. Dkt. 12 at 3-5. Plaintiff also argues the other medical evidence is consistent with Dr. Krueger's opinion and plaintiff's testimony. Dkt. 12 at 5-10.

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial

evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

On October 2, 2014, Dr. Krueger examined plaintiff and diagnosed her with major depression, recurrent, superimposed on dysthymic disorder, early onset; rule out generalized anxiety disorder; and rule out avoidant personality disorder. AR 423. Dr. Krueger opined that plaintiff had marked limitations[1] in her ability to: perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting. AR 423-24. Dr. Krueger opined that plaintiff was severely limited[2] in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms. AR 424.

The ALJ assigned "some weight" to Dr. Krueger's opinion, reasoning that Dr. Krueger's opinion:

Occurred just a few weeks after [claimant] was released from the hospital and her

---

[1] Defined as "a very significant limitation on the ability to perform one or more basic work activity." AR 423.
[2] Defined as "inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop." AR 423.

treatment notes show that the claimant's condition has improved and stabilized since then. His assessment and opinion do not appear to be consistent with the claimant's functioning level over the entire period at issue, but rather just consistent with a brief period when the claimant was having increased life stressors.

AR 31.

Dr. Krueger's opinion was contradicted by the opinions of state agency psychological consultants Matthew Comrie, Psy.D., and Bruce Eather, Ph.D., who opined that plaintiff is not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and would be able to carry out short and simple tasks on a consistent basis in a competitive work environment through a normal workday/work week while retaining adequate concentration, persistence, and pace. AR 31, 77-90, 107-120. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Krueger's opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal citation omitted); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996).

"[I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"). "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey,* 849 F.2d at 421.

1    While the Court notes that the ALJ's analysis of the medical opinions followed a

2 discussion of the medical record, the ALJ failed to explain what portion of the record showed

3 that plaintiff's condition has "improved and stabilized" since her release from the hospital or

4 how her mental health symptoms were limited to life stressors. AR 31. The ALJ does not cite to

5 any evidence or examples in the record showing any conflict with Dr. Krueger's opinion and

6 does not elaborate on which treatment notes are inconsistent with his opinion. In this regard, the

7 Court is left to guess which aspects of the record the ALJ found to be inconsistent with Dr.

8 Krueger's opinion. However, the reviewing court is not required to parse facts in the record and

9 identify specific conflicts. *See Embrey,* 849 F.2d at 421; *Burrell v. Colvin,* 775 F.3d 1133, 1138

10 (9th Cir. 2014).

11    Moreover, treatment notes after plaintiff's release from the hospital are not inconsistent

12 with Dr. Krueger's opinion and do not show that plaintiff's mental health symptoms improved or

13 were only related to life stressors. Plaintiff had some periods of improvement, but overall, she

14 continued to experience depression, post-traumatic stress disorder (PTSD), and anxiety. The

15 Ninth Circuit has found that, particularly where mental illness is involved, periods of

16 improvement do not necessarily mean that the claimant's impairments no longer affect his

17 workplace functioning. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Such

18 observations must be read in the context of the overall diagnostic picture. *Id.* Symptom-free

19 periods are not inconsistent with disability. *Id.* (internal citation omitted).

20    Plaintiff's last hospitalization occurred in September 2014. AR 408-20. Regarding

21 plaintiff's life stressors, her divorce was finalized in 2012. AR 49, 62. However, in April 2015,

22 nearly seven months after her last hospitalization and three years after her divorce was finalized,

23 plaintiff was diagnosed with major depressive disorder with psychotic features and PTSD and

24

25

prescribed medication. AR 596. The objective findings from plaintiff's mental status

examination indicate slow speech, subdued mood, restricted affect, and paranoia ideation. AR

596. In March 2016, plaintiff was diagnosed with generalized anxiety disorder, and plaintiff's

provider observed that plaintiff's mood appeared anxious. AR 666. Based on plaintiff's diagnosis

of generalized anxiety disorder, her provider increased her Cymbalta medication. AR 666. In

April 2016, plaintiff's provider noted some improvement in her mental health symptoms, but

also observed plaintiff was in an anxious and slightly depressed mood. AR 580-81; *see also* AR

570 and 630 (plaintiff reported suicidal thoughts in 2015), 577, 580-81, 584 (in 2016, plaintiff

reported paranoia, depression, and anxiety).

      Accordingly, the Court concludes that the ALJ erred by failing to provide a specific and

legitimate reason supported by substantial evidence to reject the opinion of Dr. Krueger.

      "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is not prejudicial to the claimant or

"inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc*

*Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The

determination as to whether an error is harmless requires a "case-specific application of

judgment" by the reviewing court, based on an examination of the record made "'without regard

to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19

(quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

      In the RFC assessment, the ALJ found, in relevant part, that plaintiff can perform light

work. AR 25. Regarding plaintiff's mental limitations, the ALJ found she is limited to simple

routine repetitive tasks consistent with unskilled work, low stress work (defined as work

requiring few decisions/changes), no public contact, occasional contact with co-workers and

supervisors, and she can perform at an ordinary or standard pace, but not at a strict production rate pace in which the individual has no control over the speed of the work. AR 25. Had the ALJ fully given credit to Dr. Krueger's opinion, the RFC would have also included additional limitations. As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert in response to an improper hypothetical, the error affected the ultimate disability determination and was not harmless.

## II.  The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Plaintiff alleges that she is unable to work because of the limitations caused by her physical and mental impairments. Regarding her mental health symptoms, plaintiff testified that she has depression and anxiety, she sleeps up to 16 hours per day, and she is afraid to leave the house. AR 47, 54. Plaintiff testified that she copes by distracting herself with coloring, cross-stitching, watching movies, and listening to music. AR 48. Plaintiff testified that her symptoms increased after she stopped working in 2011 due to her divorce. AR 48-49. Plaintiff testified that she is not able to look for a job because she gets very anxious and sleeps a lot. AR 52, 54.

Regarding her physical symptoms, plaintiff testified that she has pain in the lower back and both hips and legs. AR 49. Plaintiff testified that she takes medication for her back pain, but surgery is not an option yet. AR 49. Plaintiff testified she attended physical therapy in early 2016, it was helpful "to a degree," but then her back started hurting. AR 49. Plaintiff testified that she has knee problems, and the doctor recommended she try swimming and walking. AR 50. Plaintiff testified that she has pain her arms and hands, and her providers recommended she wear braces at night. AR 50.

Plaintiff testified that approximately one month before the July 2016 hearing, she was approved by the Catholic Community Connection for a caregiver to assist plaintiff with the household and with driving her to the store or doctor's visits. AR 51-52. Plaintiff testified that

she is not able to take herself to the store or doctor's visits because it is hard to walk to the bus. AR 51-52.

In her function report, plaintiff stated that she cannot work because she is unable to focus, is depressed, cries hysterically, and gets the "shakes." AR 243. Plaintiff also reported she has chest pains, and she gets scared like she is having a heart attack. AR 243. Plaintiff reported she is able to go outside for work, shopping and appointments, but she gets scared because of "all the voices." AR 246. Plaintiff reported she talks on the phone with her mom and friend daily. AR 247. Plaintiff reported she finishes tasks she starts and can follow written instructions very well, but may have to hear spoken instructions a few times. AR 248. Plaintiff reported she does not handle stress well, and she cries and gets very nervous. AR 249.

The ALJ found that plaintiff's testimony is not consistent with the medical evidence and the other evidence in the record. AR 26. Specifically, the ALJ discounted plaintiff's subjective symptom testimony reasoning that: (1) plaintiff's mental health symptoms have improved with treatment; (2) plaintiff's need for a caregiver is based on her self-reports and addresses plaintiff's loneliness rather than mental health symptoms; (3) plaintiff's daily activities are inconsistent with her testimony; (4) plaintiff failed to seek treatment for her spine and anxiety; (5) plaintiff exaggerated her symptoms; and (6) plaintiff's testimony is inconsistent with the objective evidence. AR 26-30.

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a

claimant's testimony are properly discounted, that does not render the ALJ's determination

invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter,*

242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a

whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th

Cir. 2003).

In determining a claimant's credibility, the ALJ may consider a claimant's prior

inconsistent statements concerning symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

1996). The ALJ also may consider a claimant's work record and observations of physicians and

other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

A. Improvement with Treatment – Mental Health Symptoms

The ALJ found that plaintiff's mental health symptoms improved with treatment. AR 29.

The ALJ may discount a claimant's credibility on the basis of medical improvement. *See*

*Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel,* 161

F.3d 599, 601 (9th Cir. 1998).

However, "while discussing mental health issues, it is error to reject a claimant's

testimony merely because symptoms wax and wane in the course of treatment. Cycles of

improvement and debilitating symptoms are a common occurrence, and in such circumstances it

is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *Diedrich v. Berryhill,* 874 F.3d 634, 642 (9th Cir. 2017).

Here, the ALJ cited to evidence that plaintiff has not been hospitalized since the alleged disability onset date, plaintiff engaged in counseling, plaintiff is becoming more skilled at managing her triggers, and the treatment records indicate that plaintiff's predominant issue was stress surrounding her divorce and custody. AR 29. However, as discussed above with respect to Dr. Krueger's opinion, although plaintiff experienced periods of improvement with treatment, she nevertheless continued to experience depression, anxiety, and paranoia after her divorce was finalized in 2012 and her last hospitalization in 2014. *See* AR 49, 62, 408-20, 570, 577, 580-81, 584, 586-87, 596, 630, 666.

Thus, it was improper for the ALJ to discount plaintiff's testimony by "cherry pick[ing] the absence of certain symptoms from the record[ ]" to support a denial of benefits. *Attmore v. Colvin,* 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011).

B. Plaintiff's Caregiver

The ALJ found that plaintiff's caregiver, a DSHS employee, appears to be addressing plaintiff's loneliness rather than her mental health symptoms. AR 30. The ALJ cited to evidence that plaintiff still reports going to the store, but now with her caregiver. AR 30 (citing AR 565-636). The ALJ also noted that plaintiff's need for a caregiver was based on plaintiff's self-reports, and there is no indication that any medical professional conducted an assessment or

reviewed plaintiff's records in determining plaintiff's need for a caregiver or what, if any, plaintiff's deficits are. AR 30.

While the record reflects that plaintiff's caregiver is helpful as a companion, the record also reflects that plaintiff's caregiver performs light housework and drives her to appointments and the grocery store. AR 602. Plaintiff testified that an assessment is done to determine if the individual is eligible for a caregiver, and that her eligibility was based on her physical and mental symptoms. AR 51. The ALJ does not cite to any additional evidence in the record regarding the process for obtaining a caregiver. *See* AR 30. None of this evidence reflects that plaintiff's limitations are less severe than alleged. Thus, this is not a clear and convincing reason to reject plaintiff's subjective symptom testimony.

C. Plaintiff's Daily Activities

The ALJ determined plaintiff's activities of daily living illustrate plaintiff's functional limitations are not as limiting as she has alleged. AR 30. The Ninth Circuit has recognized two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ found that plaintiff's daily activities are not consistent with her allegations. AR 30. The ALJ cited to plaintiff's ability to dance at a casino, visit with her daughters, read, watch TV, make friends at church and in her apartment building, cook her own meals, and look for work. AR 30. Yet plaintiff's testimony indicates her activities of daily living are more limited than noted by the ALJ. For example, plaintiff testified that she is not able to look for jobs because she gets very anxious and sleeps a lot, up to 16 hours per day. AR 52, 54. Plaintiff

testified that she is not able to take herself to the store or doctor's visits, because it is hard to walk to the bus. AR 51-52. Plaintiff testified that she only sees her daughters for one to two hours per month. AR 62-63. The record reflects plaintiff went dancing once at a casino once in March 2015. AR 648. Plaintiff reported to her provider that she had been more depressed, but had found some new friends to "hang around with at her apartment complex." AR 584.

Moreover, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal citation omitted). The ALJ did not cite to specific evidence demonstrating plaintiff spends a substantial part of her day performing any of these activities or the level at which she performed them is inconsistent with her other testimony. Therefore, this is not a clear and convincing reason to discount plaintiff's subjective symptom testimony.

D. Plaintiff's Failure to Follow Up with Treatment

The ALJ found that plaintiff "sought very little care for her back and other physical impairments suggesting they cause few symptoms or limitations." AR 30. Specifically, the ALJ noted that plaintiff did not complete her physical therapy and home exercises for her lumbar spine, AR 30 (citing AR 683), and that plaintiff reported not using her Lorazepam for anxiety as prescribed and had extra bottles, AR 29.

Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). A claimant's statements, therefore, "may be less credible if the level or frequency of treatment is

inconsistent with the level of complaints, or the medical reports or records show that the individual is not following the treatment as prescribed or there are no good reasons for their failure." SSR 96-7p, 1996 WL 374186 *7; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain).

With respect to plaintiff's physical therapy, plaintiff's lack of compliance is not a clear and convincing reason to reject her testimony. The record reflects that plaintiff completed three weeks of physical therapy for her spine, but reported that it caused severe pain so she discontinued therapy and did not continue with home exercises. AR 683; *see also* AR 525 (plaintiff reported she was so sore after previous therapy visit that she spent the entire weekend in bed). The ALJ did not consider this potential explanation for plaintiff's compliance with her physical therapy exercises, which is error. *See* SSR 96–7p.

Also, the record reflects that plaintiff sought pain treatment and followed her provider's recommendations. *See* AR 432 (plaintiff presented with chronic back pain, reported taking prescription pain medication for almost three years, was referred to pain specialist), 587-88 (plaintiff presented at counseling appoint as walking with a limp reporting "significant pain all over her body"), 639 (plaintiff presented with back pain, x-rays showed mild generative disc disease and scoliosis) 655 (plaintiff presented with chronic back pain and pain of left lower extremity), 657-58 (plaintiff presented with midline low back pain with sciatica presence), 679 (plaintiff presented with restricted range of motion and tenderness at lumbar spine), 683 (plaintiff presented with low back pain which improved with medication but medication did not improve

walking ability, sleep, or enjoyment of life), 692-93 (plaintiff presented with low back pain, prescribed pain medication), 694 (plaintiff presented with constant lower back pain which was "refractory to conservative treatment"); *see also* SSR. 96–7p ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

With respect to plaintiff's Lorazepam prescription, the record reflects that plaintiff prescription is to take the medication "as needed." AR 592. In August 2015, plaintiff reported she "has not needed to take her [ ] Lorazepam for anxiety." AR 590. However, a month later, a treatment note from September 2015 reflects that plaintiff was taking her Lorazepam prescription as needed, but was using it minimally. AR 587. In April 2016, plaintiff's provider noted that plaintiff was still taking Lorazepam as needed, but that "patient rarely needs for panic, used coping skills." AR 580. Thus, the record reflects that while plaintiff may have taken minimal dosages of Lorazepam, she continued to take the medication as prescribed, which was on an as-needed basis. [3]

In addition, plaintiff continued to take other medication for her depression and anxiety including Cymbalta (anti-anxiety and anti-depression medication) and Risperidone (used to treat schizophrenia and bipolar disorder).[4] *See* AR 580-590. In fact, in April 2016, plaintiff's

---

[3] The Court notes that plaintiff also argues "[t]he ALJ apparently does not realize that if a person takes Lorazepam too often, they will develop a tolerance for it and then it will not be effective when they need it. The fact that [plaintiff] is trying to minimize her use of and reliance upon Lorazepam, in accordance with medical treatment recommendations, does not 'suggest' that 'her anxiety is not great.'" Dkt. 12 at 11 (citing AR 29). However, plaintiff does not cite to any evidence in the record establishing a basis for this assertion. Therefore, the Court will not consider this argument at this time.

[4] Cymbalta is an SSNRI used to "treat depression and anxiety." Nat'l Ctr. for Biotechnology Info., *Duloxetine (by Mouth) (Cymbalta)*, NIH.gov, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010059/ (last visited August 23, 2018). Risperidone is an antipsychotic labeled for use to "treat schizophrenia, bipolar disorder, or irritability

Cymbalta prescription was increased after she reported difficulty with hypervigilance, mild anxiety, poor sleep, and depression. AR 580. Thus, the ALJ's finding that plaintiff's testimony is inconsistent with her Lorazepam prescription is not supported by substantial evidence.

E. Symptom Exaggeration

The ALJ also stated that "there is a notation from the pain clinic of symptom exaggeration, which further undermines claimant's reports." AR 28 (citing AR 696), 30. Observations that a claimant is exaggerating symptoms is a clear and convincing reason to discount a claimant's credibility. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ may consider other inconsistent or less than candid statements). However, the ALJ's conclusion that plaintiff's treatment notes from the Seattle Pain Clinic support discounting plaintiff's credibility is not supported by substantial evidence in the record.

Plaintiff saw Harvey Hall, NP, at the Seattle Pain Clinic for lower back pain in October 2015. AR 694. In the portion of the treatment notes relating to physical concerns, Mr. Hall wrote: "[N]o overt pain behavior seen." AR 696. In the psychiatric portion, Mr. Hall stated "[t]here is symptom amplification and exageration [sic]." AR 696.

First, the fact that Mr. Hall did not observe any pain behavior does not indicate that plaintiff was exaggerating her pain symptoms. *See Smolen*, 80 F.3d at 1284. In fact, Mr. Hall recommended pain medications "to optimize functionality and [quality of life] since non-opioid therapies alone have not been adequate." AR 692. Mr. Hall also noted that plaintiff's Waddell signs (a test administered to identify patients with psychological pain) were absent. AR 692.

---

associated with autistic disorder." Nat'l Ctr. for Biotechnology Info., *Citalopram (by Mouth)*, NIH.gov, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012012/?report=details (last visited August 23, 2018).

Thus, the ALJ's finding that plaintiff was exaggerating her physical symptoms is not supported by substantial evidence.

To the extent that this evidence can be considered with respect to plaintiff's mental health symptoms, plaintiff sought treatment from the Seattle Pain Clinic for her lower back pain. *See* AR 692. Although plaintiff submitted a mental health checklist during her visit, Mr. Hall conducted a physical exam and his findings are related to an assessment of plaintiff's physical condition, not her mental condition; the record does not indicate that Mr. Hall is a psychiatrist or has any mental health qualifications. *See* AR 691-94; *see, e.g.*, 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (the ALJ is permitted to "give more weight to the opinion of a specialist about medical issues related to his or her own area of specialty than to the opinion of a source who is not a specialist."). Accordingly, this is also not a clear and convincing reason supported by substantial evidence to reject plaintiff's testimony related to her mental health impairments.

F. Objective Evidence

The ALJ determined plaintiff's testimony was inconsistent with the objective evidence. AR 26-27. Determining a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, an ALJ "may not disregard [a claimant's credibility] solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

The ALJ provided six reasons for discounting plaintiff's statements. AR 26-30. The Court has determined the ALJ's the first five reasons for discounting plaintiff's subjective symptom

testimony are improper. The only remaining reason for discounting plaintiff's complaints is because the complaints are inconsistent with the objective evidence. *See* AR 26-27. As this is the sole remaining reason and as a claimant's testimony may not be rejected solely on the basis of inconsistencies with the objective evidence the Court need not determine if the sixth reason is proper. The Court finds the ALJ has not provided legally sufficient reasons for discounting plaintiff's subjective symptom testimony. Accordingly, the ALJ erred.

G. Harmless Error

The ALJ's error is not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Plaintiff testified to greater limitations than those included in the RFC determine. For example, plaintiff testified she cannot work due to her physical and mental limitations, and that she has difficulty concentrating, walking, sitting, lifting, bending, standing, reaching, kneeling, completing tasks and with her memory. AR 49-50, 59, 61, 248.

In contrast, the ALJ found in the RFC that plaintiff can perform light work except she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs and can occasionally balance, stoop, kneel, and crouch. AR 25. With respect to her mental limitations, the ALJ determined plaintiff is limited to simple routine repetitive tasks consistent with unskilled work, low stress work (defined as work requiring few decisions/changes), no public contact, and occasional contact with co-workers and supervisors, and she can perform at an ordinary or standard pace but not at a strict production rate pace in which the individual has no control over the speed of the work. AR 25. Had the ALJ properly considered plaintiff's subjective symptom testimony, he may have included additional limitations in the RFC and in the hypothetical

questions posed to the vocational expert. As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal.

III.   The ALJ's Evaluation of the Lay Witness Testimony

Plaintiff's mother, Josefina Lamrouex, provided a function report on plaintiff's behalf. AR 264-69. Ms. Lamrouex stated that plaintiff's activities are limited by her lack of motivation, concentration, and sleeping. AR 264. She reported plaintiff is not interested in doing much of anything. *Id.* Ms. Lamrouex stated plaintiff would rather stay inside than go out unless she needs to. AR 267. Ms. Lamrouex stated plaintiff goes shopping and to football games but does not go to social events alone. AR 268. Ms. Lamrouex stated that plaintiff has limitations in her memory, completing tasks, and concentrating. AR 269.

The ALJ gave some weight to Ms. Lamrouex's statements, reasoning that her testimony is not supported by the record and the records indicate that plaintiff no longer has contact with her mother, which suggests the information is outdated and does not reflect plaintiff's current level of functioning. AR 30.

Lay witness testimony by friends, neighbors, and family members in a position to observe the claimant's symptoms is competent evidence. *See Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987); *Bilby v. Schwieker,* 762 F.2d 716, 719 n.3 (9th Cir. 1985); 20 C.F.R. § 404.1513(e)(2). An ALJ must take into account lay witness testimony as to the claimant's symptoms or how impairments affect the claimant's ability to work. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount competent lay witness testimony, the ALJ must provide reasons that are "'germane to each witness.'" *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

First, the record does not support the ALJ's finding that plaintiff no longer has contact with her mother. At the hearing, plaintiff testified she had not seen her mother in about six

months to a year, but testified that they spoke on the phone every other day to every two to three days. AR 58.

Although inconsistency with medical evidence is germane for purposes of discrediting lay witness testimony, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), the testimony provided by Ms. Lamrouex regarding plaintiff's impairments is consistent with the medical evidence. *See* AR 393 (plaintiff diagnosed with acute stress reaction, depression with transient suicidal ideation and possible borderline personality disorder), 414 (plaintiff observed with restricted affect, depressed and anxious mood), 408-09 (plaintiff observed with decreased level of psychomotor activity, heightened affect, anxious and depressed mood), 480 (plaintiff presented with sad expression, tearful with congruent affect and depressive cognitions), 580-81 (plaintiff observed in anxious and slightly depressed mood), 596 (plaintiff observed with slow speech, subdued mood, restricted affect, and paranoid ideation), 631 (plaintiff observed with despondent expression and depressive cognitions). Ms. Lamrouex's testimony is also consistent with Dr. Krueger's opinion that plaintiff is markedly limited in her ability to understand, remember, and persist in tasks by following detailed instructions and set realistic goals and plan independently. AR 423-24. As such, the ALJ erred in discounting Ms. Lamrouex's lay witness testimony because it was not consistent with the objective medical evidence.

Defendant argues that even if the ALJ erred, any error was harmless because plaintiff's own testimony was rejected for valid reasons, and to the extent plaintiff's testimony overlaps on the issue of disability, the same conclusions the ALJ reached apply to both plaintiff and Ms. Lamrouex. Dkt. 13 at 7-8. However, as found above, the ALJ did not state clear and convincing reasons for rejecting plaintiff's subjective symptom testimony.

Moreover, Ms. Lamrouex testified to greater limitations than those included in the RFC. Had the ALJ properly considered Ms. Lamrouex's lay witness testimony, he may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational expert. As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

IV.  The ALJ's Evaluation of the RFC, Hypothetical Questions, and Step Five Findings

Plaintiff argues that due to the alleged errors, the RFC was not supported by substantial evidence. Dkt. 12. Because the Court has concluded that the ALJ erred in reviewing the medical evidence, plaintiff's subjective symptom testimony and the lay witness testimony, and that this matter should be reversed and remanded for further consideration on this basis, *see supra*, sections I, II and III, the remainder of the sequential disability evaluation process, including the RFC assessment and step five, will need to be re-evaluated.

V.  Remedy

 "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be required on remand to find that the claimant is disabled; and fifth, the reviewing court has no serious doubts as to whether the

claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, (9th Cir. 2014). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels*, 874 F.3d at 668.

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the opinion of Dr. Krueger, plaintiff's subjective symptom testimony, and the lay witness testimony of Ms. Lamrouex. Accordingly, issues remain regarding the medical evidence in the record concerning plaintiff's functional limitations, and serious doubt remains with respect to the disability determination. Accordingly, remand for further consideration is warranted. Specifically, on remand the Commissioner shall re-evaluate the medical evidence, plaintiff's subjective symptom testimony, the lay witness testimony of Ms. Lamrouex, plaintiff's residual functional capacity, plaintiff's ability to perform her past relevant work, and, if necessary, plaintiff's ability to perform other jobs existing in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 19th day of December, 2018.

Theresa L. Fricke
United States Magistrate Judge

ORDER - 23